IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GERALD ANTHONY FRANZ                    Case No. 3:14-CV-00065-MA

                    Plaintiff,         OPINION AND ORDER

        v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

                    Defendant.

TIM WILBORN
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137

        Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

RICHARD A. MORRIS
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

        Attorney for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Gerald Franz seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g). For the reasons that follow, I reverse and remand for an immediate calculation and award of benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB on May 1, 2007, alleging disability beginning June 15, 2006, due to chronic pain in his back as well as anxiety and depression. Plaintiff last met the insured status requirements for a DIB application on December 31, 2007.

After being denied at the initial and reconsideration levels, plaintiff requested and was granted a first hearing before an administrative law judge (ALJ) on August 10, 2009. The ALJ issued an unfavorable decision on November 2, 2009, which plaintiff appealed to this court. Based on the stipulation of both parties, on April 17, 2012, this court reversed and remanded the decision pursuant to Sentence Four of 42 U.S.C. § 406 for further administrative proceedings. *See* Tr. 657-660.

The same ALJ held a second hearing on March 18, 2013, at which plaintiff appeared with his attorney, but plaintiff did not testify

to anything of substance relevant to his claims. A vocational expert (VE), Patricia B. Ayerza, appeared and testified. On April 3, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's April 3, 2013 decision became the final decision of the Commissioner for purposes of review.

Born in 1955, plaintiff was 57 years old on the date of the ALJ's adverse decision. Plaintiff has a GED and an associates degree in science. Plaintiff's past relevant work includes motel maintenance, gas station attendant, and retail cashier.

### THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe

impairments: mild degenerative disc disease; chronic obstructive pulmonary disease; bipolar disorder, not otherwise specified (NOS); alcohol abuse (claimed partial remission); and history of polysubstance abuse (in remission). At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with several additional non-exertional work limitations. Plaintiff can frequently balance and kneel but only occasionally stoop or crouch and should avoid concentrated exposure to environmental irritants and hazards in the workplace. Plaintiff can perform simple routine tasks without public contact, and with no more than brief occasional interaction with coworkers and supervisors. Plaintiff would work best alone and not as part of a team in the workplace to complete assigned tasks.

At step four, the ALJ found plaintiff is unable to perform any past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as housekeeper, garment sorter, and electronics worker. Accordingly, the ALJ concluded that plaintiff has not been under a disability

under the Social Security Act from December 31, 2007, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate plaintiff's testimony; (2) the ALJ failed to properly evaluate the opinions of treating physician Harry Rinehart, M.D. and examining physician Rory Richardson, Ph.D.; and (3) the ALJ failed to properly evaluate the lay testimony of Debra Franz.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the

Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

I. **The ALJ Erred in Evaluating Plaintiff's Credibility**

A. **Standards**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.12629. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim*, 763 F.3d

1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors
the ALJ may consider when making such credibility determinations
include the objective medical evidence, the claimant's treatment
history, the claimant's daily activities, inconsistencies in
testimony, effectiveness or adverse side effects of any pain
medication, and relevant character evidence. *Ghanim*, 763 F.3d at
1163; *Tommasetti*, 533 F.3d at 1039.

### B.    Analysis

At the August 10, 2009 hearing, plaintiff testified to
sleeping as much as 15 hours per day. Tr. 43. Plaintiff attributed
this to his depression. *Id*. Plaintiff also testified that he is
able to sit in front of a computer for fifteen to twenty minutes at
a time before he becomes uncomfortable. Tr. 48. Plaintiff noted
that he is unable to drive due to his back and leg pain. Tr. 51.
Plaintiff further testified that he avoids crowds because he cannot
handle them; plaintiff acknowledged that he was reprimanded at his
previous job for negative interactions with customers. Tr. 54.
Plaintiff reported that he was terminated from his most recent job
for aggressive verbal behavior with his supervisor. Tr. 40.
Plaintiff testified to having chronic back pain on a daily basis
and taking methadone to relieve his pain. Tr. 43-44. Plaintiff did
not testify about his impairments at the March 18, 2013 hearing.

In a June 22, 2007, Activities of Daily Living (ADLs) report,
plaintiff reported bathing two times a month. Tr. 155. Plaintiff

also noted that he sleeps more than before, which he attributes to his depression. *Id.* Plaintiff reported that he requires verbal reminders from his wife to take his medications; he helps prepare frozen dinners every other day. Tr. 156. Plaintiff also reported helping with minor household chores including laundry and loading the dishwasher. *Id.* Plaintiff noted that he goes grocery shopping once a week for about 30 minutes. Tr. 157. Plaintiff reported that he does not engage in social activities and tries to go out of the house as little as possible; he also reported that he fears being out in public and cannot handle stress well. Tr. 158, 160.

In the decision, the ALJ found plaintiff only partially credible. The ALJ gave four reasons for rejecting plaintiff's testimony. As discussed below, taken together, these reasons fail to reach the clear and convincing level.

### 1. conservative treatment

An "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, lack of medical treatment due to an inability to afford medical treatment does not support an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, the ALJ cites to plaintiff's infrequent mental health treatment and failure to take prescribed medication properly as an indication of a less than good

faith effort to achieve medical improvement. The ALJ's reasoning is flawed.

The ALJ overlooks the simple fact that plaintiff is unable to afford mental health treatment. Plaintiff testified at the first hearing that he was only able to attend three or four counseling sessions before Veterans Affairs (VA) stopped authorizing counseling sessions. Tr. 41, 474, 476-78, 589. In 2008, treatment notes indicate that plaintiff "attempted to obtain treatment that has been less than satisfactory through the Veteran's Administration." Tr. 479. The record is replete with references to plaintiff's inability to obtain mental health treatment due to lack of adequate insurance coverage. *See generally*, Tr. 60, 140, 373, 474, 476-79, 519. In this case, plaintiff's lack of mental health treatment is due to an inability to afford treatment and thus, does not support an adverse credibility determination. *Orn*, 495 F.3d at 638.

The ALJ also discredited plaintiff because he is non-compliant with medical treatment. Tr. 557. The ALJ noted that the medical record indicates plaintiff was prescribed medication to treat his bipolar disorder, but plaintiff was not taking it. Tr. 557. The ALJ misconstrues plaintiff's testimony. While medical treatment notes from 2006 show prescriptions for lithium and lexapro, the VA ceased paying for his prescribed medication for his mental impairments in July 2007. Tr. 45, 151, 399. Based on treatment notes in 2008 and

2009, it appears plaintiff remained without coverage for his psychiatric medications. Tr. 487, 488, 501. Contrary to the ALJ's finding, during plaintiff's first hearing in August 2009, plaintiff truthfully testified that he was not then taking any medication for his mental impairments because he could not afford medication without coverage. Tr. 41, 45. A list of plaintiff's medications dated December 2011, indicates that he was once again prescribed lithium and lamictal for his mental impairments. Tr. 783, 793. Thus, on the record before me, the ALJ's first reason for discrediting plaintiff is not supported by substantial evidence.

### 2. ADLs

The ALJ also discounted plaintiff's credibility, finding his activities of daily living inconsistent with his subjective limitations. For example, the ALJ noted that the plaintiff is able to walk his dog around the block, lift ten to twenty pounds, and complete housework such as laundry and cooking. Tr. 554, 557. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen*, 80 F.3d at 1284 n.7. Plaintiff's report of significant back pain is not inconsistent with the ability to perform minimal household chores.

Additionally, the ALJ noted that plaintiff is able to watch television and play video games. Tr. 555. Plaintiff also reported avoiding crowds and social situations. Tr. 53, 54, 158. Contrary to the ALJ's suggestion, plaintiff's excessive sleeping, twelve to thirteen hours a day, and playing video games and watching television supports his allegation of being socially withdrawn. Tr. 52-53, 158. Plaintiff's ability to watch television and play video games is consistent with his reported mental symptoms. Therefore, I conclude that the ALJ's reasoning on this point is not supported by substantial evidence.

### 3. intentionally vague and contradictory testimony

The ALJ cites to plaintiff's inconsistent and vague statements at the hearing and in the medical record regarding alcohol and marijuana use as a reason to discount his credibility. Tr. 58-59, 299, 304, 392. An ALJ may consider prior inconsistent statements concerning symptoms and "other testimony by [plaintiff] that appears less than candid in weighing plaintiff's credibility." *Tommasetti,* 533 F.3d at 1039. As the ALJ accurately reported, at the 2009 hearing, plaintiff testified that he recently stopped drinking alcohol completely. Tr. 58. Plaintiff then ceded that he will occasionally have a beer. *Id.* The ALJ also discussed that plaintiff reported in 2006 that he was consuming a six pack plus two beers per day to every two days, yet plaintiff stated at the 2009 hearing that he had been sober for eight years. Tr. 64, 299.

In terms of marijuana, plaintiff had a medical marijuana license that expired at the end of May 2009. Tr. 59, 392, 481. The ALJ also discussed that plaintiff inconsistently testified at the 2009 hearing that he was no longer smoking marijuana, but later admitted he was using a vaporizer to ingest THC. Tr. 59-60. Moreover, the ALJ noted that plaintiff's medical marijuana card had expired, yet he continued to use it. The ALJ concluded plaintiff's testimony was inconsistent with plaintiff's report to his treating physician, Harry Rinehart, that he was participating in the cannabis program. Tr. 481. The ALJ's findings are wholly supported by the record. I conclude that the ALJ appropriately discredited plaintiff on this basis.

### 4. work history inconsistent with alleged onset date

The ALJ discredited plaintiff because his work history is inconsistent with his alleged onset date of disability. Tr. 557. Evidence of a poor work history that suggests a claimant is not motivated to work is a proper reason to discredit a claimant's testimony that he is unable to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). I disagree that plaintiff's work history is inconsistent with his allegations of disability.

The ALJ ignores facts in the record that sufficiently explain the discrepancy between plaintiff's work history and alleged onset date. As the ALJ correctly noted, plaintiff has no earnings in 2001-2002, and no earnings after 2004. Tr. 127. Yet, in 2001,

plaintiff applied for disability for the first time and received an unfavorable ALJ decision in September 2002. Tr. 19. Plaintiff then returned to work in 2003 and 2004 as a cashier at Fred Meyer. Tr. 129, 165. With regard to his current disability application, plaintiff initially alleged disability beginning December 29, 2004. Tr. 547.

At the August 2009 hearing, plaintiff's attorney requested to amend plaintiff's alleged onset disability date to June 15, 2006. Plaintiff's counsel gave several reasons for wanting to amend the alleged onset date including the fact that plaintiff reached 50 years old in 2006, few medical treatment notes prior to 2006, and a medical source statement from Dr. Rinehart dated June 15, 2006, indicating that plaintiff is able to perform less than full sedentary work. Tr. 36-7. This request appears strategic to obtain a favorable decision from the ALJ. At step five, the medical-vocational grid rules direct a finding of disability where an individual is at least 50 years old and can perform only sedentary work. 20 C.F.R. § 404 Appendix 2 to Subpart P, Section 201.14. Contrary to the ALJ's determination, the gap in earnings from 2001-2002 and lack of earnings after 2004 are consistent with plaintiff's allegations of the onset of his disability. In fact, plaintiff worked steadily from 1980 to 2001. Tr. 127. Thus, because plaintiff's gaps in employment are adequately explained by the

record, this is not a convincing reason to reject plaintiff's testimony.

In sum, although the record supports one of the reasons the ALJ provided to discount plaintiff's testimony, I conclude that the ALJ's remaining reasons, when taken together, do not constitute clear and convincing support for the ALJ's adverse credibility determination.

## II. The ALJ Erred in Evaluating Treating and Examining Physician Opinions

### A. Standards

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Orn*, 495 F.3d at 632. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted)(alterations in original); 20 C.F.R. § 404.1527(c). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148(9th

14 - OPINION AND ORDER

Cir. 2001). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

### B.   Rory Richardson, Ph.D.

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for discounting the opinion of examining[1] physician Rory Richardson, Ph.D. On February 22, 2006, Dr. Richardson examined the plaintiff in connection with his current disability application. Dr. Richardson diagnosed plaintiff with Bipolar Disorder, NOS, rapid cycle with aggressive episodes; Obsessive Compulsive Disorder, severe; Post-Traumatic Stress Disorder; and Dyssomnia, NOS. Tr. 302. Plaintiff met with Dr. Richardson again in May and June of 2008, but discontinued treatment when the VA refused to cover further treatment. Tr. 477-79.

Dr. Richardson submitted three opinions in connection with plaintiff's social security application. First, in a February 22, 2006 examination report, Dr. Richardson opined that plaintiff's

---

[1] Social Security Administration first requested Dr. Richardson to examine plaintiff in March 2001 for his 2001 disability application. Tr. 297. The agency again requested Dr. Richardson to examine plaintiff in February 2006 for the current disability application. *Id.* In 2008, plaintiff requested regular psychotherapy sessions with Dr. Richardson. Tr. 477. Thus, Dr. Richardson has treated plaintiff beyond the general role of an examining physician. However, Dr. Richardson is referred to as an examining physician because he only met with plaintiff in a treating capacity on only two occasions. Tr. 477-79.

difficulty within the workplace and tendency to state his mind would be consistent with his anger outbursts, mood swings, and severe anxiety. Tr. 301. Dr. Richardson further opined that plaintiff's "intrusions of ruminative obsessions [are] significant enough to interfere with any social functioning." *Id.* Second, Dr. Richardson submitted an opinion dated July 13, 2008, in which he opined that plaintiff's level of dysfunction continues to be severe and affirmed his February 2006 evaluation and diagnosis. Tr. 474. Dr. Richardson noted that although plaintiff's level of agitation has mildly reduced, his mood remained significantly labile. *Id.* Dr. Richardson also opined that plaintiff is unable to maintain ongoing employment with any success as of July 2008. *Id.*

Third, on July 29, 2009, Dr. Richardson provided two form opinions, a rating of impairment severity form and a mental residual functional capacity (MRFC) form, both dated July 29, 2009 Tr. 513-521. Dr. Richardson opined in the rating of impairment severity form that plaintiff has marked limitations in the areas of activities of daily living, social functioning, and concentration, persistence, and pace. Tr. 518. In the MRFC form, Dr. Richardson opined that plaintiff is markedly limited in his ability to accept instructions and respond appropriately to criticism from supervisors and his ability to get along with coworkers without

distracting them or exhibiting behavioral extremes.[2] Tr. 521. In the MRFC, Dr. Richardson also opined that plaintiff is markedly limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. *Id.*

Because Dr. Richardson's opinion was contradicted,[3] the ALJ was required to provide specific and legitimate reasons, backed by substantial evidence, to reject his opinion. *Bayliss*, 427 F.3d at 1216. In the decision, the ALJ gave Dr. Richardson's opinion "little weight" because: (1) the limitations described by Dr. Richardson are inconsistent with the objective medical record; (2) the opinion is inconsistent with plaintiff's ADLs; (3) the opinion is dated over a year after plaintiff's date last insured. Having carefully reviewed the record, I conclude that the ALJ's reasoning falls short.

### 1. consistent with medical evidence

A medical opinion's inconsistency with the objective medical record may constitute an adequate reason to discredit that opinion. *Tommasetti*, 533 F.3d at 1041. Contrary to the ALJ's finding, the

---

[2] Plaintiff also indirectly argues that Dr. Richardson's 2009 opinion supports a finding that plaintiff's impairment would medically meet or equal Listing 12.04 or 12.06. Pl. Br. (#14) p. 14. Because I have determined the ALJ made other harmful error, I decline to address plaintiff's step three arguments.

[3] In April 2006, Peter LeBray, Ph.D., a nonexamining physician, opined that plaintiff can understand, remember, and complete simple tasks. Dr. LeBray also opined that plaintiff is limited to no public contact and infrequent contact with coworkers, but he can respond to routine supervision. Tr. 265.

overall record is consistent with Dr. Richardson's opinions that plaintiff is markedly limited in ADLs, social functioning, and concentration, persistence, and pace.

Dr. Richardson's opinions are consistent with his 2006 and 2008 examinations. In his February 2006 examination, Dr. Richardson noted that plaintiff reported only socializing with his wife, leaving the house only when necessary, and experiencing increased anger issues. Tr. 299-300. During the examination, Dr. Richardson noted that plaintiff could perform serial 7s, but could only remember two out of four words after a five minute delay and was unable to correctly identify the last four United States presidents. Tr. 300. Dr. Richardson found that plaintiff had significant difficulty with abstract processing. *Id.* On May 21, 2008, Dr. Richardson again examined plaintiff and noted that he demonstrated substantial relatively grandiose episodes of thought and limited mental flexibility. Tr. 513. Dr. Richardson noted plaintiff was extremely distracted but was able to recall three out of four words after a five minute period. Tr. 513. Dr. Richardson further indicated that plaintiff tends to misinterpret comments from other people as negative and is extremely hypervigilant. Tr. 515.

Moreover, Dr. Richardson's opinions are consistent with the overall medical record. For example, in May 2006, Harry Rinehart, M.D., treating physician, noted that plaintiff reported an increase

in his depression and increased his lithium dosage. Tr. 364. In
August 2006, plaintiff expressed suicidal ideation to Dr. Rinehart.
Tr. 374. In September 2006, Dr. Rinehart noted that plaintiff's
mood swings are stable but that he is still very depressed. Tr.
378. Dr. Rinehart's treatment notes further indicate that while on
high doses of lithium, plaintiff's moods are more stable, but
plaintiff still experienced significant depression. Tr. 364, 366-
68, 378. Dr. Rinehart has prescribed effexor, lithium, and lamictal
to treat his bipolar disorder. Tr. 501,783. Moreover, in May 2007,
Dr. Rinehart noted that lithium was no longer effective in treating
plaintiff's bipolar symptoms. Tr. 392. With the exception of a
brief period of stability, the majority of the medical record is
consistent with Dr. Richardson's opinion that plaintiff has serious
limitations in social functioning. *See generally* Tr. 361, 364, 392,
482, 501.

In sum, the overall medical record is consistent with Dr.
Richardson's opinion that plaintiff has marked limitations in
social functioning. Thus, the ALJ erred in rejecting Dr.
Richardson's opinion on this basis.

### 2. ADLs

A claimant's ability to engage in daily activities that are
incompatible with the severity of symptoms described by a treating
physician is an appropriate basis upon which to discredit that
opinion. *Ghanim*, 763 F.3d at 1162; *see Morgan v. Comm'r of Soc.*

*Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999)(inconsistency between a treating physician's opinion and a claimant's daily activities is a specific and legitimate reason to discount the treating physician's opinion); *Batson*, 359 F.3d at 1196. However, none of the ADLs performed by plaintiff exceed the mental limitations described by Dr. Richardson.

Dr. Richardson opined that plaintiff had a marked limitation in ADLs, social functioning and concentration, persistence, and pace, and contrary to the ALJ's determination, plaintiff's limited ADLs support Dr. Richardson's opinion. Tr. 518. For example, plaintiff sleeps for twelve to thirteen hours a day, due to his depression. Tr. 155, 299, 364, 378, 380. Plaintiff reported helping with household chores such as doing laundry; however, plaintiff also noted relying on his wife for completing many tasks. Tr. 155-56. For example, plaintiff noted that he relied on his wife to help him take care of their dog and for verbal reminders to shower and take his medications. Tr. 156.

Moreover, plaintiff's ADLs indicate an avoidance of social interaction altogether. In a June 22, 2007 ADLs report, plaintiff reported that he feels other people are out to get him. Tr. 159. Plaintiff also reported similar social paranoia to Dr. Richardson. Tr. 299. More specifically, plaintiff indicated that he does not spend time with others and purposely avoids public areas and crowds. Tr. 158-59. Plaintiff also reported that he needs to be

accompanied by his wife if he leaves the house. Tr. 158. Indeed, Dr. Richardson assessed that "it is very likely that if [plaintiff] was not in the current situation with his wife, his condition would substantially deteriorate and become even more impaired as far as functioning." Tr. 301.

Thus, I conclude the ALJ's determination that Dr. Richardson's opinions are inconsistent with plaintiff's ADLs is not supported by substantial evidence, and therefore, does not provide a specific or legitimate basis to reject his opinion. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

### 3. opinion after DLI

The fact that Dr. Richardson's July 2009 medical source statement is after plaintiff's date last insured is not a legitimate reason to discount his opinion. Dr. Richardson's medical source statement is based on his May 2008 medical evaluation of plaintiff. Tr. 513. "This court has specifically held that 'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'" *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (citing *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)). "It is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith*, 849 F.2d at 1225 (citing *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)). Dr. Richardson's opinion in July 2009,

relates to a period prior to the expiration of plaintiff's insured status. Dr. Richardson specifically opined that "the level of dysfunction that was seen in previous contacts ... including the psychodiagnostic evaluation of February 22, 2006, continues to be valid." Tr. 474. Thus, the ALJ's reason that Dr. Richardson's opinion is after plaintiff's date of insured status is not an appropriate ground to reject his opinion.

Because the ALJ's determination is not supported by substantial evidence, I conclude the ALJ has failed to provide sufficient, specific or legitimate reasons to reject Dr. Richardson's opinion.

### C.   Harry H. Rinehart, M.D.

Plaintiff argues that ALJ erred in assigning "little weight" to Dr. Rinehart's opinions because the ALJ did not provide specific and legitimate reasons to discredit the opinions. Plaintiff is correct.

Dr. Rinehart provided several medical opinions including two medical source statements. In an October 1, 2007 medical source statement, Dr. Rinehart opined that plaintiff could occasionally carry and lift ten pounds, sit for six hours a day, stand for two hours a day, and walk for 40 minutes a day. Tr. 433-34. Dr. Rinehart noted that plaintiff could never reach but could occasionally handle, finger, feel, use foot controls, and push/pull. Tr. 435. Dr. Rinehart also opined that plaintiff could

never climb stairs/ramps, ladders or scaffolds; balance; stoop; kneel; crouch; or crawl. Tr. 436. Dr. Rinehart also indicated that plaintiff's bipolar disorder was a major limiting factor. Tr. 438. In a second medical source statement dated July 31, 2009, Dr. Rinehart opined that plaintiff was even more limited and found that plaintiff could sit for 30 minutes, stand for 30 minutes and walk for 15 minutes within an eight-hour workday. Tr. 524. Dr. Rinehart noted that plaintiff spends the remainder of the eight-hour workday laying down due to back pain. *Id.*

The ALJ provided several reasons for discrediting Dr. Rinehart's opinions: (1) the opinions are unsupported by objective findings; (2) Dr. Rinehart's opinions are inconsistent with plaintiff's ADLs; (3) the 2009 medical source statement is after the expiration of plaintiff's insured status; (4) Dr. Rinehart failed to take into account plaintiff's abilities if he took his medication as prescribed and ceased abusing drugs; and (5) Plaintiff's attorney requested an opinion from Dr. Rinehart. Because Dr. Rinehart's opinions were contradicted by Dr. Jensen, the ALJ was required to provide specific and legitimate reasons to discredit Dr. Rinehart's opinions.[4]

---

[4] Linda L. Jensen, M.D., nonexamining physician, provided a physical RFC assessment in April 2006, which contradicts Dr. Rinehart's opinions. Specifically, Dr. Jensen opined that plaintiff is could perform light work except is limited to occasionally stooping, crouching and climbing ladders, ropes, and scaffolds. Tr. 268-272. In January 2007, nonexamining physician Martin Kehrli affirmed Dr. Jensen's opinion. Tr. 261. The ALJ

## 1. unsupported by clinical findings

When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Tonapetyan*, 242 F.3d at 1149. Here, the ALJ correctly found, Dr. Rinehart's medical opinions are not supported by his examination findings. The majority of Dr. Rinehart's treatment notes provide few objective physical medical findings, specifically with respect to range of motion in his back and neck. *See generally*, Tr. 361, 364, 366, 367, 383, 392. In April 2007, Dr. Rinehart noted decreased range of motion in the back with tenderness in the neck and back. Tr. 388.

Other medical evidence in the record shows plaintiff is capable of greater functioning than opined by Dr. Rinehart. An x-ray of plaintiff's lumbar spine in March 2006 revealed degenerative disk disease in the form of disk space narrowing at L5-S1. Tr. 292. In February 2006, Robert J. Tilley, M.D., an examining physician, noted full range of motion in plaintiff's neck, shoulders, arms, back, and lower extremities. Tr. 305. Most notably, Dr. Tilley noted bilateral negative straight leg raise tests and a slightly wide stance but otherwise normal gait. Tr. 307. He noted that plaintiff used protective mechanisms in rising from seated and lying positions. *Id.* Dr. Tilley opined that plaintiff was capable

---

gave moderate weight to Dr. Kehrli's opinion because the ALJ did not find that the medical record supports a limitation to occasional crawling. Tr. 555-56.

of sitting for four hours a day and standing and walking for three hours each a day. Tr. 308. Dr. Tilley also opined that plaintiff requires alternating from sitting to standing and vice versa more frequently than every two hours. *Id.* Therefore, I conclude that the ALJ has provided a specific and legitimate reason to discount Dr. Rinehart's opinion.

### 2. ADLs

The ALJ discredits Dr. Rinehart's opinion because it is inconsistent with plaintiff's ADLs. I disagree with this determination. Plaintiff completes household chores such as cooking meals, loading the dishwasher, and doing laundry. Tr. 156. Dr. Rinehart noted in July 2006 that plaintiff walked his dogs four blocks daily. Tr. 367. However, these activities are not inconsistent with Dr. Rinehart's opinion that plaintiff is limited in standing and walking due to back pain. Plaintiff's ability to complete minor household chores is not inconsistent with physical limitations due to back pain. In fact, plaintiff notes that he is unable to perform more physically challenging tasks around the house. For example, plaintiff reported hiring a person to mow his lawn. Tr. 157. In sum, the ALJ erred in rejecting Dr. Rinehart's opinion on this basis.

### 3. opinion after DLI

As previously discussed, an ALJ may not discredit a medical opinion on the basis that it was dated after the expiration of

plaintiff's insured status. "It is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith*, 849 F.2d at 1225 (citing *Kemp*, 522 F.2d at 969. Dr. Rinehart's opinions dated after the expiration of plaintiff's insured status are relevant to the evaluation of plaintiff's pre-expiration impairments. Thus, the ALJ erred in discrediting Dr. Rinehart's opinions on this basis.

### 4. medical compliance and drug abuse

The ALJ also discounted Dr. Rinehart's opinions because Dr. Rinehart failed to consider the impact of plaintiff taking his medication as prescribed and abstaining from using marijuana on his abilities. The ALJ's reasoning is flawed. As discussed above, plaintiff was unable to afford his psychiatric medication between 2007 and 2009 because his VA benefits refused to pay for the medication. Tr. 60, 140, 373, 474, 476-79, 519. There is no further indication in the record that plaintiff did not comply with other medications prescribed by Dr. Rinehart.

With respect to plaintiff's marijuana use, in January 2006, Dr. Rinehart concluded that plaintiff met the requirements for Oregon's medical marijuana program. Tr. 372. Then, in May 2007, Dr. Rinehart noted that plaintiff's marijuana use might adversely impact his bipolar depressive symptoms and recommended that plaintiff discontinue his use of medical marijuana on a trial basis. Tr. 392. As discussed previously, plaintiff continued to use

26 - OPINION AND ORDER

marijuana through May 2009, when he no longer had a valid medical marijuana license. Tr. 59-60. However, the ALJ fails to point to evidence in the medical record noting that plaintiff's use of marijuana would adversely impact his physical abilities; Dr. Rinehart's medical source statements focus entirely on plaintiff's physical limitations. Thus, I conclude this reasoning is not supported by substantial evidence in the record and is not a specific or legitimate reasons to reject Dr. Rinehart's opinions.

### 5. plaintiff solicited opinion

Finally, the ALJ discredits Dr. Rinehart's opinion on the basis that it was requested by plaintiff's attorney. "The ALJ may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Ratto v. Secretary*, 839 F.Supp. 1415, 1426 (D. Or. 1993). The ALJ may question a doctor's credibility if there is evidence of actual improprieties. *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996). In this case, it appears that plaintiff's attorney requested an opinion from Dr. Rinehart regarding plaintiff's physical limitations. Tr. 449-450. Dr. Rinehart provided an October 2007 medical source statement in response to this request. Tr. 433. After careful review of the record and contrary to the ALJ's suggestion, I conclude there is no evidence of impropriety or that Dr. Rinehart formed his opinion at the direction of plaintiff's attorney. To be sure, Dr. Rinehart assessed plaintiff with severe limitations when he began treating

plaintiff in December 2003. Thus, this is not a specific and legitimate reason to discredit Dr. Rinehart's opinion.

In summary, the ALJ provided one valid reason backed by substantial evidence to discount Dr. Rinehart's opinion. However, I conclude that this single basis, on the record before me, does not provide specific and legitimate reasons to discount Dr. Rinehart's opinions.

## III. **The ALJ Erred in Assessing the Lay Testimony**

Lay witness testimony as to how a claimant's symptoms affect his ability to work is competent evidence, which the ALJ must take into account. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

Plaintiff's wife, Debra Franz, submitted a third party function report dated June 30, 2007. Mrs. Franz noted that plaintiff sleeps twelve to fourteen hours a night and helps her grocery shop and fix dinner. Tr. 133. Mrs. Franz reported that plaintiff spends the majority of his time sleeping. Tr. 134. Mrs. Franz also reported that plaintiff only goes outside when the couple needs groceries, and she must accompany him on a quick trip to the store. Tr. 136. Mrs. Franz described that plaintiff watches

28 - OPINION AND ORDER

television all night and does not engage in any social activities. Tr. 137. Mrs. Franz stated that plaintiff no longer visits family members because he is very paranoid. Tr. 138. Most notably, Mrs. Franz reported that plaintiff has significant problems with authority figures and is unable to handle stress and becomes angry or cries as a result. Tr. 139.

The ALJ gave "little weight" to Mrs. Franz's testimony because: (1) her testimony is inconsistent with plaintiff's ADLs; and (2) it is inconsistent with the medical record as a whole. Tr. 555. I disagree with the ALJ's reasoning.

Plaintiff's report of his ADLs is consistent with Mrs. Franz's testimony. As discussed above, plaintiff reported avoiding social activities and crowds, spending at least thirteen hours a day sleeping, and reported feeling significant paranoia in social situations. Tr. 40, 43, 158-59. Plaintiff also reported that he was fired from his most recent job for frequent conflicts with his supervisor. Tr. 40, 160. The ALJ's reasoning is not supported by substantial evidence.

Additionally, contrary to the ALJ's finding, Mrs. Franz's testimony regarding plaintiff's mental limitations is supported by the medical record as a whole. As discussed previously, plaintiff was prescribed lithium to treat his bipolar disorder. Tr. 361, 364, 366. Dr. Richardson opined that plaintiff has marked limitations in social functioning, especially in plaintiff's ability to accept

criticism from a supervisor. Tr. 521. Dr. Richardson also noted that plaintiff's difficulty within the workplace is consistent with severe social distress and anger outbursts. Tr. 301. I conclude that the ALJ failed to provide germane reasons to reject Mrs. Franz's testimony. Thus, the ALJ erred in evaluating Mrs. Franz's lay testimony. *Valentine*, 574 F.3d at 694.

Because the errors identified above are outcome determinative, I decline to address plaintiff's remaining argument.

## V.    **Credit as True**

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed. *Vasquez*, 572 F.3d at 593.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to

find the claimant disabled were such evidence credited.
*Id.*

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. *Connett v. Barnhart*, 340 F.3d 873, 876 (9th Cir. 2003). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010). Moreover, "[plaintiff] is not entitled to benefits under the statute unless [he] is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Here, all the conditions of the credit-as-true rule are satisfied. First, the record has been fully developed and there is no need for further administrative proceedings. Second, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Richardson and Rinehart and for discrediting plaintiff's testimony and lay testimony. Third, if Dr. Richardson's opinion is credited as true, the ALJ would be required to find plaintiff disabled at Step Five on remand. *Garrison*, 759 F.3d at 1022; *Holohan v. Massanari*, 246 F.3d 1195, 1211 (9th Cir. 2001).

Indeed, Dr. Richardson opined that plaintiff has marked limitations with social functioning and concentration, persistence and pace. Tr. 518, 521. Specifically, Dr. Richardson found that plaintiff is prone to anger outbursts and reactivity. Tr. 515. Dr.

31 - OPINION AND ORDER

Richardson further opined that plaintiff has marked limitations in his ability to accept instructions and respond appropriately to criticism from supervisors and get along with coworkers without distracting them. Tr. 521. The VE testified that if a person has an inability to cooperate with his supervisor in the workplace resulting in frequent conflicts over a continuous basis, competitive employment would be precluded. Tr. 576. At the March 2013 hearing, the VE also testified that a person with marked limitations in concentration, persistence, and pace would be precluded from competitive employment. Tr. 577. With respect to plaintiff's alcohol abuse, Dr. Richardson opined that absent his drinking, plaintiff would still have "severe psychiatric issues which would intrude on most work situations." Tr. 301. Dr. Richardson's medical opinion is sufficient to conclude that drug and alcohol abuse is not a contributing factor material to plaintiff's disability. 20 C.F.R. § 404.1535; Social Security Ruling 13-2p, available at 2013 WL 621536, *5 (Feb. 20, 2013). Therefore, there are no outstanding issues that require resolution.

Lastly, considering the record as a whole and the Commissioner's arguments, I have no basis to doubt that plaintiff is disabled under the Act. Therefore, the proper remedy is to remand for calculation of benefits. *Garrison*, 759 F.3d at 1022-23.

**CONCLUSION**

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this __/ /__ day of February, 2015.

_Malcolm F Marsh_
Malcolm F. Marsh
United States District Judge

33 - OPINION AND ORDER